UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LAUREN M. BEASLEY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| vs. § | CIVIL ACTION NO. H-05-0579 |
| § | |
| CITY OF SUGAR LAND AND OFFICER § | |
| KELLY GLESS, § | |
| § | |
| *Defendants*. § | |

## OPINION ON SUMMARY JUDGMENT

Defendant City of Sugar of Land has filed a motion for summary judgment (Dkt. 22) on plaintiff Lauren M. Beasley's claim pursuant to 42 U.S.C. § 1983. Having considered the parties' submissions, oral argument, and applicable legal authority, the court concludes that the motion should be granted.

### I.    BACKGROUND FACTS

The following facts are taken as true for purposes of this summary judgment motion.[1] On January 3, 2003, a few days after her 18th birthday, Beasley was cited for driving her mother's car with no driver's license, no current motor vehicle inspection or registration, no insurance, and no license plate light. Beasley was

---

[1] Although Sugar Land disputes that the strip search described by Beasley actually occurred, it recognizes that a factual dispute exists on this point. Therefore, Sugar Land moves for summary judgment based on the lack of an unconstitutional policy that was the moving force behind the search, assuming it happened as Beasley alleges.

summoned to appear in court on January 24, 2003, but mistakenly appeared on January 29, 2003.  On February 20, 2003, Sugar Land police officer Kelly Gless arrested Beasley at her home pursuant to an arrest warrant issued for her failure to appear in court.  Beasley was allowed to put on shoes and socks, but was taken to jail in the clothes she was wearing, pajama pants and cotton shirt with no bra.  On the way to the Sugar Land jail, Gless radioed for a female officer to meet him at the jail to perform a search.

At the jail, a female police officer, Monica Rhodes, told Beasley to stand with her hands against a wall.  Rhodes instructed Beasley to lift her shirt, and Rhodes lifted Beasley's breasts to feel beneath them.  Rhodes then instructed Beasely to drop her pants while continuing to hold up her shirt. Rhodes pulled Beasley's panties taut and did a quick two-finger swipe across Beasley's vagina.[2]  Gless allegedly witnessed this search.

---

[2] Beasley's Original Complaint alleges she was subjected to a "strip search and body cavity search," but Beasley's description of the events do not indicate that a body cavity search occurred and she makes no arguments in her summary judgment briefing based on such a search.  Thus, the court concludes that Beasley has withdrawn any claim related to a body cavity search and this case involves only an alleged strip search.

Beasley alleges that the strip search conducted by Sugar Land police officers violated her right under the Fourth Amendment to be free from unreasonable search and seizure.[3]

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc.*

---

[3] Sugar Land is the only defendant. Officer Rhodes was never named as a defendant in this action. The only individual defendant, Officer Gless, was dismissed upon the parties' agreed stipulation by order entered September 16, 2005 (Dkt. 21).

*v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)); *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255; *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002).

### III.   ANALYSIS

Beasley has sued Sugar Land pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute ... of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

A municipality, such as Sugar Land, cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691 (1978). Municipal liability may be imposed only when the enforcement of a municipal policy or custom was the "moving force" behind the alleged

constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 385-91 (1989); *Doe on Behalf of Doe v. Dallas Independent School Dist.,* 153 F.3d 211, 215-16 (5th Cir. 1998).

Beasley asserts that Chapter 1 R1 to the Sugar Land Police Department Detention Manual ("Detention Manual") was the moving force behind the unconstitutional strip search. That chapter provides:

> Persons in custody should undergo a thorough strip and body cavity search when the Arresting/Transporting Officer reasonably* believes it to be necessary to maintain the security of the facility. The strip search **SHALL** be conducted by an Officer of the same gender in a reasonable and dignified manner.[4]

A footnote (represented in the quote by an asterisk), to this provision provides that "[r]easonable suspicion would include an indication from a hand held metal detector/wand that passes over a body cavity." Beasley argues that this policy is unconstitutional because it permits strip searches of all arrestees without any consideration of the type of crime allegedly committed and without reason to believe that the arrestee is concealing a weapon or contraband.

Sugar Land argues that its policy meets constitutional requirements because it requires a particularized suspicion that the arrestee is a threat to security. Sugar Land contends that the detention manual must be read in conjunction with General Order

---

[4] Detention Manual, Chapter 1 R1, ¶ I(F) (emphasis in original) (attached to Affidavit of Douglas Brinkley, defendant's exhibit A).

# 70-01. General Order 70-01 generally addresses procedures to be followed when transporting a prisoner to or between jail or other facilities. General Order 70-01 provides:

> Since it is not the policy of this department to strip search every prisoner, an officer who believes a strip search is necessary will request authorization from the on-duty supervisor. The on-duty supervisor will only authorize such searches when there is probable cause to believe the person is concealing a weapon or contraband.[5]

The Fourth Amendment prohibits only "unreasonable" searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). The Supreme Court has set forth the following guidelines for determining whether a search is reasonable:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559. Beyond stating the general reasonableness test, *Bell*, which involved visual body cavity searches of pre-trial detainees conducted after every contact visit, is not helpful to determining the reasonable of a strip search under the facts of this case.

---

[5] General Order # 70-01, ¶ E(2) (attached to Affidavit of Douglas Brinkley, defendant's exhibit A).

The Seventh Circuit applied the *Bell* balancing test in *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983).  In *Mary Beth G.*, four women challenged Chicago's policy requiring a strip search and visual body cavity search of all women arrested and detained in city lockups, regardless of the charges against them or whether there was reason to believe they were concealing weapons or contraband. *Id.* at 1266.  The court noted that it must balance the severe invasion of privacy represented by the body cavity inspection with the government interest in conducting the particular searches in question. *Id.* at 1272.  The court concluded that "while the need to assure jail security is a legitimate and substantial concern, . . . the strip searches bore an insubstantial relationship to security needs so that, when balanced against plaintiffs-appellees' privacy interests, the searches cannot be considered 'reasonable.'" *Id.* at 1273.  The strip searches were unreasonable "without a reasonable suspicion by the authorities that either of the twin dangers of concealing weapons or contraband existed." *Id.*

The Fifth Circuit followed the lead of the Seventh Circuit in *Stewart v. Lubbock Cty., Texas*, 767 F.2d 153 (5th Cir. 1985).  The policy at issue in *Stewart* permitted the strip search of any arrestee.  The court held the policy unconstitutional as applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or

contraband. 767 F2d at 156-57. The Fifth Circuit again scrutinized a jail strip search policy in *Watt v. City of Richardson Police Dep't*, 849 F.2d 195 (5th Cir. 1988). The policy at issue in *Watt* provided for the strip search of offenders arrested on charges of narcotics, shop-lifting or weapons violations or having a criminal history of such charges. 849 F.2d at 197. The plaintiff in *Watts* was arrested for failure to license her dog. She was cooperative with police, and volunteered the admission that she had been convicted more than 10 years earlier on a minor narcotics charge. *Id.* at 196. The court upheld the policy at issue because in many instances, strip searches of arrestees with histories of narcotics, weapons, or shop-lifting charges would be justified by security concerns and constitutional. However, each case requires a case-by-case analysis. *Id.* at 198. The Fifth Circuit concluded that *Watts* presented a case in which a strip search based on criminal history alone was not justified. *Id.* at 199.

Beasley argues that the Sugar Land strip search policy, like those in *Mary Beth G.* and *Stewart*, is unreasonable, and thus unconstitutional, because it allows a strip search based only on a generalized interest in facility security, without regard to the charges against the arrestee or the existence of a reasonable suspicion that the arrestee is concealing a weapon or contraband. Beasley interprets the Detention Manual as if it read "Persons in custody should undergo a thorough strip and body cavity search

because it is necessary to maintain the security of the facility." Beasley's interpretation of Sugar Land's policy is strained and untenable.

Unlike the unconstitutional policies at issue in *Mary Beth G.* and *Stewart*, Sugar Land's policy does not allow strip searches of all arrestees based on a generalized need to maintain security. Neither does the policy permit strip searches of a category of prisoners, as in *Watts*. Instead, the policy allows a strip search only when the arresting or transporting officer has a "reasonable suspicion" that the individual is a threat to facility security. The manual goes on to provide an example of when reasonable suspicion would exist, *i.e.*, when there has been a positive signal from a hand-held metal detector. The Detention Manual thus is clear that there must be some objective reason to suspect the particular prisoner is a threat to security before a strip search is authorized. An officer who generally thinks all prisoners should be searched in order to maintain security would not have a valid reason for conducting a strip search under the Detention Manual. On the other hand, a reasonable belief that a prisoner may be concealing a weapon or contraband would be the most obvious justification for a strip search under the Detention Manual's security rationale.

Sugar Land's strip search policy as stated in the Detention Manual is constitutional under the test of "reasonableness" set forth in *Bell*. The court's

9

interpretation of Sugar Land's policy is further supported by General Order # 70-01. Beasley contends that General Order # 70-01 has no application to searches conducted at the Detention Center because it is directed solely to prisoner transportation. Beasley's argument is based solely on the fact that the General Order is contained in a section titled "Prisoner Transportation." While General Order # 70-01 addresses conditions under which an officer transporting a prisoner to jail after an arrest may request a strip search, it expressly provides that any such strip search must take place in a private setting, generally in the Detention Center.[6] Therefore, it is clear that both General Order # 70-01, which is directed to prisoner transportation, and the Detention Manual, which is directed to procedures at the Detention Center, are applicable to strip searches conducted on a prisoner upon arrival at the Detention Center.[7] Officer Rhodes testified that she was required to comply with both the General Orders and the Detention Manual when conducting a stip search at the

---

[6]  *Id.* at ¶ E(5).

[7]  In support of her contention that only the Detention Manual applies to strip searches at the Detention Center, Beasley relies on a telephone conversation between her mother, Kitty Duhon, and Sugar Land Officer Faucett. Faucett read the Detention Manual to Duhon in response to Duhon's request for procedures governing cavity searches. *See* exhibit H to plaintiff's response. When the transcript of the conversation is read in its entirety, it is clear that Faucett informed Duhon that he would have to look into the matter further, and that the General Orders, which he did not have in front of him, would also be applicable. *Id*. Defendant has objected (Dkt. 25) to exhibit H as irrelevant because this case does not involve a body cavity search and because Faucett does not make policy for the Sugar Land Police Department. Defendant's objection to the admissibility of exhibit H is overruled, but the exhibit is not dispositive of any issue before the court.

Detention Center.[8]  The court concludes that the Sugar Land's policies do not permit unconstitutional strip searches based on a generalized interest in maintaining jail security.

Finally, even assuming that Sugar Land's policy could reasonably be construed to authorize unconstitutional searches, there is no evidence that the policy was the moving force that resulted in Beasley's strip search.  Neither Officer Rhodes nor any other city official testified that a strip search of Beasley was required or permitted by the Detention Manual.  Nor did any officer suspect that Beasley was a threat to security.  Any strip search of Beasley under the circumstances would have been in spite of, not because of, Sugar Land Police Department policy.[9]

## IV.   CONCLUSION

A strip search occurring under the circumstances alleged by Beasley would doubtless violate her constitutional right to be free from unreasonable search and seizure.  But a municipality cannot be held liable under § 1983 for such a search unless the exacting standards of *Monell* and *City of Canton* are met.  Because Beasley cannot show either that Sugar Land's strip search policy violates the Fourth

---

[8]   Affidavit of Officer Monica Rhodes, at ¶¶ 8-10, exhibit B to defendant's motion.

[9]   *Id.* at ¶ 11.

Amendment, or that such policy was a moving force behind her strip search, defendant's motion for summary judgment is granted.

The court will issue a separate final judgment.

Signed at Houston, Texas on January 19, 2006.

Stephen Wm Smith
United States Magistrate Judge